IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORTH AMERICAN COMMUNICATIONS, INC., | ) ) ) | CIVIL ACTION NO. 3:14-227 |
| Plaintiff, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| JOSEPH SESSA, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.       Introduction

This action arises from a dispute involving trade secrets and unpaid commissions. Plaintiff North American Communications, Inc. has brought an action for declaratory judgment and seeks to terminate its relationship with Defendant Joseph Sessa, absolving it of any payment obligations to Defendant, and protecting Plaintiff's confidential and propriety information and trade secrets improperly obtained by Defendant.  (*See* ECF No. 1 ¶¶ 1-3.)  Presently before the Court is Defendant's motion to dismiss the complaint pursuant to Rule 12(b) and Defendant's motion to compel Plaintiff's initial disclosures. (ECF Nos. 5, 20.)  Defendant seeks dismissal of the complaint pursuant to Rule 12(b) on two separate grounds:  (1) insufficient service of process and (2) failure to state a claim for which relief can be granted.   For the reasons stated below, the Court will **DENY** Defendant's motion to dismiss the complaint, because Plaintiff has complied with the rules of procedure concerning service of process and has stated a plausible claim for relief, and the Court will **GRANT** Defendant's motion to compel Plaintiff's initial disclosures.

## II.     Jurisdiction

The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

## III.    Background

Plaintiff initiated this action seeking a declaratory judgment to "establish the termination of the verbal independent contractor agreement" between Plaintiff and Defendant, and seeking the termination of payment obligations and the protection of confidential and proprietary information and trade secrets.  (ECF No. 1 ¶¶ 1-3.)  Plaintiff alleges the following facts in the complaint, which the Court will accept as true for the sole purpose of deciding the pending motions.

Plaintiff and Defendant entered into a business arrangement in which Defendant operated as an independent contractor and sales representative of Plaintiff.  (*Id.* ¶ 11.)  The parties did not enter into a written agreement concerning this business arrangement.  (*Id.* ¶ 14.)  Defendant solicited orders for direct mail manufacturing and other services offered by Plaintiff.  (*Id.* ¶ 12.)  He received compensation in an amount equal to a negotiated commission based on the net income of the solicited order and reimbursed expenses related to Defendant's actions on behalf of Plaintiff.  (*Id.* ¶ 13.)

As Plaintiff's independent sales representative, Defendant was privy to Plaintiff's trade secrets and confidential and proprietary information, including, but not limited to: customer and client lists; prospective customer and client lists; and Plaintiff's processes,

pricing structure, and related information. (*Id.* ¶ 15.) Upon Plaintiff's information and belief, Defendant, while still soliciting orders on Plaintiff's behalf, used its trade secrets and confidential or proprietary information to contact its customers and clients in an attempt to solicit business away from Plaintiff and to another entity with which Defendant was also performing services. (*Id.* ¶¶ 16-17.) Defendant disclosed Plaintiff's trade secrets and confidential or proprietary information to the entity prior to, and following, the termination of his business relationship with Plaintiff. (*Id.* ¶ 18.)

On September 11, 2014, Plaintiff's counsel notified Defendant by letter that his business relationship with Plaintiff was terminated, effective immediately. (*Id.* ¶ 19; ECF No. 1-2.) Plaintiff paid Defendant commissions owed to him, as well as reasonable expenses that he incurred, through the date of his termination because he was only entitled to the receipt of commissions during the length of the business relationship, which was terminated on September 11, 2014. (ECF No. 1 ¶¶ 20-22.) By letter on October 1, 2014, Defendant's counsel notified Plaintiff that Defendant is entitled to continuing commissions and demanded payment of them through December 2015. (*Id.* ¶ 23; ECF No. 1-3.)

Plaintiff filed a five-count complaint against Defendant on October 21, 2014, seeking a declaratory judgment and compensatory damages. (ECF No. 1.) In Count I, Plaintiff asserts a declaratory judgment claim against Defendant, requesting that the Court adjudge whether and to what extent Defendant is entitled to compensation from Plaintiff. (*Id.* ¶¶ 25-35.) In Count II, Plaintiff asserts a claim against Defendant for breach of fiduciary duty. (*Id.* ¶¶ 36-45.) In Count III, Plaintiff asserts a claim against Defendant

for tortious interference with current and prospective business relationships. (*Id.* ¶¶ 46-53.) In Count IV, Plaintiff asserts a claim against Defendant for the violation of the Pennsylvania Uniform Trade Secrets Act. (*Id.* ¶¶ 54-60.) In Count V, Plaintiff asserts a claim against Defendant for unfair competition. (*Id.* ¶¶ 61-64.)

On February 13, 2015, Defendant filed a motion to dismiss the complaint pursuant to Rule 12(b), arguing that service of process was insufficient and that Plaintiff failed to state a claim for which relief can be granted. (ECF No. 5.) On March 6, 2015, Plaintiff filed a response in opposition to Defendant's motion to dismiss. (ECF No. 11.) After the Court granted Defendant's motion to reply (ECF No. 13), Defendant filed a reply brief to Plaintiff's response on March 16, 2015 (ECF No. 14). On June 22, 2015, Defendant filed a motion to compel Plaintiff's initial disclosures, to which Plaintiff did not respond. (ECF No. 20.) As the parties have fully briefed the Court in all other respects (ECF Nos. 6, 11, 14, 20), this matter is now ripe for adjudication.

## IV. Legal Standard

### A. Insufficient Service of Process, Rule 12(b)(5)

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a court may dismiss a case for "insufficient of service of process." Fed. R. Civ. P. 12(b)(5). The United States Supreme Court has instructed that "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). When an objection to proper service of process is made, "the party making the service has the

burden of demonstrating its validity." *Sampath v. Concurrent Techs. Corp.*, 227 F.R.D. 399, 402 (W.D. Pa. 2005); *see also Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir.1993).

The Federal Rules provide two alternatives a plaintiff may use to effectuate service upon an individual. FED. R. CIV. P. 4(e). First, service may be effected by: (1) "delivering a copy of the summons and of the complaint to the individual personally;" (2) leaving a copy of both the summons and the complaint at the individual's "dwelling or usual place of abode with someone of suitable age and discretion who resides there;" or (3) delivering a copy of the summons and complaint to an authorized agent. FED. R. CIV. P. 4(e)(2)(A)-(C). Second, Rule 4(e) authorizes a plaintiff to effectuate proper service of process by following proper state law. Specifically, service of process may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1).

Under Pennsylvania law, where the District Court is located, original process outside the Commonwealth must be served by a competent adult: (1) handing a copy to the defendant; or (2) handing a copy "at the residence of the defendant to an adult member of the family with whom he resides" or "at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof." PA. R.C.P. 402(a)(1)-(2), 404(1). To effectuate service by mail, "a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent." PA. R.C.P. 403, 404(2).

Under New York law, where service was attempted, service may be made by: (1) delivering the summons to the person to be served; (2) delivering the summons "to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and "either mailing the summons to the person to be served at his or her last known residence" or "mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential;'" (3) delivering the summons to the agent for service of the person to be served; or (4) "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served" and "either mailing the summons to such person at his or her last known residence" or "mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential.'" N.Y. C.P.L.R. § 308(1)-(4).

### B. Failure to State a Claim, Rule 12(b)(6)

Defendant has also moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows a party to seek dismissal of a complaint or any portion of a complaint for failure to state a claim upon which relief can be granted. Although the federal pleading standard has been "in the forefront of jurisprudence in recent years," the

standard of review for a Rule 12(b)(6) challenge is now well established. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 (3d Cir. 2009).

In determining the sufficiency of a complaint, a district court must conduct a two-part analysis. First, the court must separate the factual matters averred from the legal conclusions asserted. *See id.* at 210. Second, the court must determine whether the factual matters averred are sufficient to show that plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint need not include "'detailed factual allegations.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Moreover, the court must construe the alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *See id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F. 3d 651, 653 (3d Cir. 2003)). However, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678. Rather, the complaint must present sufficient "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has shown a "plausible claim for relief" is a "context-specific" inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The relevant record under consideration includes the complaint and any "document integral to or explicitly relied upon in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)

(citing *In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997)). If a complaint is vulnerable to dismissal pursuant to Rule 12(b)(6), the district court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236; *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

### C.      Motion to Compel Discovery, Rule 26

Generally, materials that are relevant to an issue in a case are discoverable unless they are privileged. Rule 26 explains the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows:   Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1). While the scope of discovery under the Federal Rules is broad, "this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Indeed, Rule 26(b)(1) imposes "two content-based limitations upon the scope of discovery:  privilege and relevance." *Trask v. Olin Corp.*, No. 12-CV-340, 2014 U.S. Dist. LEXIS 28362, at *40 (W.D. Pa. 2014).

Even relevant discovery may be limited by a court "if the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the

action and the importance of the discovery in resolving the issues."  *Id*. at *41 (citing FED. R. CIV. P. 26(b)(2)(C)).  "In evaluating whether a party is entitled to discovery, the trial court should not simply rule on some categorical imperative, but should consider all the circumstances of the pending action."  *Id*. at *44.

## V. Discussion

### A. Defendant's Motion to Dismiss for Insufficient Service of Process

Defendant argues that Plaintiff failed to properly serve him under the applicable federal and state rules.  (ECF No. 6 at 4.)  Specifically, Defendant asserts that Plaintiff failed to comply with Pennsylvania Rule of Civil Procedure 403 because he did not request a return receipt when he attempted service on November 3, 2014.  (*Id*. at 6.) Defendant further contends that Plaintiff failed to comply with New York Civil Practice Rules because he was never personally served, no other person at his residence was served, his prior attorney rejected service because he was not an authorized agent, and the envelope affixed to the door of his residence "was posted conspicuously."[1]  (*Id*. at 7-8.)  In response, Plaintiff argues that it made a good-faith effort to comply with the rules because it attempted to serve Defendant on multiple occasions at numerous addresses.  (ECF No. 11 at 7.)  Plaintiff requests that the Court grant it additional time to serve Defendant.  (*Id*.)

Federal Rule of Civil Procedure 4(m) provides that a court must dismiss an action without prejudice if service is not made upon a defendant within 120 days after the

---

[1] The Court interprets Defendant's statement that the envelope "was posted conspicuously" as a typographical error that was intended to state that the envelope "was not posted conspicuously."

plaintiff has filed the complaint. FED. R. CIV. P. 4(m). However, the rule further states that "if the plaintiff shows good cause for the failure [of service], the court must extend the time for service for an appropriate period." *Id.* In determining whether good cause exists, courts examine the reasonableness of the plaintiff's efforts to effectuate service; prejudice to the defendant caused by the lack of timely service; and whether the plaintiff moved for an enlargement of time to effectuate service. *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).

Contrary to Defendant's arguments, Plaintiff has established good cause for failing to serve Defendant. After filing the complaint on October 21, 2014 (ECF No. 1), Plaintiff attempted to serve Defendant through his attorney, William J. Greagan, on October 22, 2014 (ECF No. 11, Ex. A). When Attorney Greagan refused to accept service, Plaintiff sent a copy of the summons and complaint to Defendant's home address by certified and regular mail on November 3, 2014. (*Id.*, Ex. B.) The certified mailing was returned as unclaimed on January 5, 2015. (*Id.*, Ex. C.) On January 12, 2015, Plaintiff engaged a process server to personally serve Defendant at his home in Troy, New York. (*Id.*, Ex. D.) The process server visited Defendant's residence on January 15, 17, and 20, 2015, but was unable to complete service. (*Id.*, Ex. E.) On January 26, 2015, the process server affixed a copy of the summons and complaint to the door of Defendant's residence and mailed a copy in a first-class envelope marked as "Personal and Confidential." (*Id.*)

On February 5, 2015, Plaintiff again attempted to effectuate service by mailing a copy of the summons and complaint to Defendant by first-class, certified mail. (*Id.*, Ex. F.) On February 12, 2015, Plaintiff sent a copy of the summons and complaint to Defendant's

addresses in Albany, Averill Park, and Troy, New York, and to Defendant's business address in Rockville, Maryland. (*Id.,* Exs. G-H.) The certified mail receipt for the package sent to Maryland was delivered but was not signed by Defendant. (*Id.,* Ex. G.)

After Defendant's counsel of record, Ryan H. James, filed a motion to dismiss on February 13, 2015, Plaintiff requested that he accept service on Defendant's behalf, but Attorney James declined. (*Id.* at 3.) Plaintiff again mailed a copy of the summons and complaint to Defendant's home address in Troy, New York, which was delivered on February 18, 2015. (*Id.,* Ex. I.) On February 17, 2015, Plaintiff again engaged a process server to personally serve Defendant in Troy, New York. (*Id.,* Ex. J.) The process server visited Defendant's residence on February 17, 18, and 20, 2015, but was unable to complete service. (*Id.,* Ex. K.)

In applying the factors a court should consider when determining whether good cause exists for failure of service, it is evident that Plaintiff made a good-faith effort to effectuate service upon Defendant. First, Plaintiff attempted to serve Defendant multiple times at several different addresses. In one instance, the process server indicated that he believed he spoke with Defendant, but the individual denied that he was Defendant. (*See id.*) Plaintiff also requested that Defendant's initial counsel and current counsel accept service. As Plaintiff's efforts to serve Defendant were "not only diligent but exhaustive," *Emmanouil v. Mita Management, LLC,* No. 11-CV-5575, 2012 U.S. Dist. LEXIS 83642, at *12 (D.N.J. June 15, 2012) (finding the plaintiffs acted in good faith by attempting service on five occasions), it has demonstrated that it undertook reasonable efforts to effectuate service. *See also Metro. Life Ins. Co. v. Kalenvitch,* No. 10-CV-02108, 2011 U.S. Dist. LEXIS

78851, at *2-3 (M.D. Pa. July 20, 2011) (finding the plaintiff made reasonable efforts to serve the defendant by mailing waivers of service and making two attempts at personal service).

Second, Defendant has not been prejudiced by the delay in service because he has filed a motion to dismiss this action and a motion to compel discovery. He therefore has actual notice of this action and has not suffered any prejudice. *See Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir. 1988) (holding that a defendant with actual notice of the claims and underlying facts and legal theories "cannot complain of undue prejudice"). Third, although Plaintiff did not request additional time to effectuate service until March 6, 2015, this is "not by itself fatal to [its] efforts to establish good cause." *Emmanouil*, 2012 U.S. Dist. LEXIS 83642, at *14; *see also McDonald v. SEIU Healthcare*, No. 13-CV-2555, 2014 U.S. Dist. LEXIS 130670, at *15-16 (M.D. Pa. Sept. 18, 2014) (finding good cause in light of the plaintiff's reasonable efforts to serve the defendant even though the plaintiff did not move for an enlargement of time). As such, the Court finds that Plaintiff's attempts to serve Defendant were in good faith. The Court will therefore deny Defendant's motion to dismiss the complaint and will grant Plaintiff's request to quash service. *See Nekula v. Banovsky*, No. 10-CV-1180, 2011 U.S. Dist. LEXIS 151315, at *28 (W.D. Pa. Dec. 5, 2011) ("[D]ismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should, at most, quash service, leaving the plaintiff free to effect proper service.") (internal quotations and alterations omitted).

**B.   Defendant's Motion to Dismiss for Failure to State a Claim**

Defendant has moved to dismiss four of the counts contained in Plaintiff's five-count complaint.  Specifically, Defendant argues that Counts II, III, and V are barred as a matter of law under Pennsylvania's Uniform Trade Secrets Act (UTSA).  (ECF No. 5 ¶ 2.)  He further alleges that Count IV fails to state a claim upon which relief can be granted.  (*Id.* ¶ 3.)   The Court will separately evaluate Defendant's arguments under the legal principles that apply to motions to dismiss, as stated above.

### 1.  Counts II, III, and V – Breach of Fiduciary Duty, Tortious Interference with Business Relationships, and Unfair Competition

In Counts II, III, and V of the complaint, Plaintiff alleges that Defendant:   (1) breached his fiduciary duty to Plaintiff by disclosing Plaintiff's proprietary and confidential information and trade secrets; (2) tortiously interfered with Plaintiff's current and prospective business relationships by wrongfully and unlawfully obtaining and retaining Plaintiff's confidential information and trade secrets; and (3) engaged in unfair competition by soliciting Plaintiff's current and prospective clients, utilizing Plaintiff's trade secrets, and retaining Plaintiff's confidential and proprietary information.  (ECF No. 1 ¶¶ 36-53, 61-64.)  Defendant argues that all three claims "are displaced by the UTSA because each is based upon allegations of [Defendant] misappropriating trade secrets."  (ECF No. 6 at 10.)  In response, Plaintiff contends that dismissal of its claims would be premature because there has not yet been a determination as to whether the information at issue constitutes trade secrets.  (ECF No. 11 at 10.)

Pennsylvania's UTSA allows for the recovery of damages for actual losses and unjust enrichment resulting from the misappropriation of a trade secret and provides for an award of exemplary damages. *See* 12 PA. CONS. STAT. § 5304. The UTSA defines a "trade secret" as:

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:
>> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* § 5302. The UTSA "displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret." *Id.* § 5308(a). However, the following claims are not affected: "contractual remedies, whether or not based upon misappropriation of a trade secret" and "other civil remedies that are not based upon misappropriation of a trade secret." *Id.* § 5308(b)(1)-(2).

The preemption issue that Defendant raises in his argument has resulted in a split of authority among jurisdictions. Some jurisdictions hold the UTSA preempts all claims based upon the unauthorized use of information. *See, e.g., AirDefense, Inc. v. AirTight Networks, Inc.*, No. 05-CV-04615, 2006 U.S. Dist. LEXIS 55364 (N.D. Cal. July 26, 2006) (finding claims based on the same factual allegations as claims for misappropriation of trade secrets were preempted and granting motion to dismiss); *Mortgage Specialists, Inc. v. Davey*, 904 A.2d 652, 664 (N.H. 2006) (finding non-contract claims that were based upon

the unauthorized use of information were preempted); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000) (holding non-contract claims were preempted to the extent that they were based on a misappropriation of trade secrets).

Other jurisdictions hold that the question of preemption cannot be addressed until it is determined whether the allegedly misappropriated information constitutes a trade secret. *See, e.g., Genzyme Corp. v. Bishop*, 463 F. Supp. 2d 946, 949 (W.D. Wis. 2006) (denying motion to dismiss because what constitutes a trade secret is "a fact-intensive inquiry" that "is better addressed on summary judgment"); *Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 295 F. Supp. 2d 430, 437 (D. Del. 2003) (denying motion to dismiss because it was "premature" to rule whether the claims were preempted); *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 659 (E.D. Va. 2002) (denying motion to dismiss "because it cannot be established at this juncture whether the confidential information at issue in this case is a trade secret").

Within the Commonwealth, "[t]he vast majority of courts to have addressed whether PUTSA preempts common law tort claims on a motion to dismiss have determined that such a determination is inappropriate in such circumstances." *Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, No. 11-CV-04568, 2011 U.S. Dist. LEXIS 139980, at *14 (E.D. Pa. Dec. 6, 2011). *See also Advanced Fluid Sys. v. Huber*, 28 F. Supp. 3d 306, 325 (M.D. Pa. 2014) (denying motion to dismiss "because the court [was] disinclined to make such a determination [as to preemption] without the benefit of a fully developed record"); *Council for Educ. Travel v. Agata Czopek*, No. 11-CV-00672, 2011 U.S. Dist. LEXIS 99230, at *21-22 n.4 (M.D. Pa. Sept. 2, 2011) (denying motion to dismiss

because determining whether the information was a trade secret was "not appropriate for resolution at this stage of the proceedings"); *Hecht v. Babyage*, No. 10-CV-724, 2010 U.S. Dist. LEXIS 106895, at *13 (M.D. Pa. Oct. 6, 2010) ("[F]inding the claims preempted would at this point be premature."); *Youtie v. Macy's Retail Holding, Inc.*, 626 F. Supp. 2d 511, 523 (E.D. Pa. 2009) (declining to find claims preempted "at this time because defendants may still be able to recover . . . in the event that the 'first cost' data does not constitute a misappropriation of a trade secret under the PUTSA"); *Cenveo Corp. v. Slater*, No. 06-CV-2632, 2007 U.S. Dist. LEXIS 9966, at *10 (E.D. Pa. Feb. 12, 2007) ("[T]he cases holding that the Trade Secrets Act does not preempt common law tort claims when it has yet to be determined whether the information at issue constitutes a trade secret take the better approach.").

Within this the Western District of Pennsylvania, several decisions have followed the majority and denied motions to dismiss because the facts necessary to determine whether trade secrets were at issue were not yet developed. *See, e.g., Partners Coffee Co. v. Oceana Servs. & Prods. Co.*, No. 09-CV-236, 2009 U.S. Dist. LEXIS 113209, at *31 (W.D. Pa. Dec. 4, 2009) (denying motion to dismiss because "[t]he reviewing court must determine on a case-by-case basis if the confidential business information is a trade secret"); *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 07-CV-1029, 2008 U.S. Dist. LEXIS 33463, at *17-18 (W.D. Pa. Apr. 23, 2008) (refusing to dismiss claims for unfair competition and conspiracy because "[w]here there has been no determination that the information at issue constitutes a trade secret within the purview of PUTSA, courts have been reluctant to dismiss related state law claims").

Defendant cites to only one federal case — *Power Contracting, Inc. v. Stirling Energy Systems, Inc.*, No. 09-CV-00970, 2010 U.S. Dist. LEXIS 123635 (W.D. Pa. Nov. 22, 2010) — to support his argument that Plaintiff's claims are preempted by the UTSA. (ECF No. 14 at 1-2.) Given the overwhelming authority in the Commonwealth and in this Court's District holding that the issue of preemption should be addressed after discovery has been completed, the Court will deny Defendant's motion to dismiss Counts II, III, and V of Plaintiff's complaint and will defer its consideration of whether the information at issue constitutes trade secrets, without prejudice to Defendant raising the defense at a later stage in this litigation.

### 2. Count IV – Pennsylvania's UTSA

In Count IV of the complaint, Plaintiff alleges that Defendant is in possession of its confidential and proprietary information and trade secrets, which he obtained through improper means, and that such information is protected by Pennsylvania's UTSA. (ECF No. 1 ¶¶ 54-60.) Defendant argues that because Plaintiff fails to aver that he acquired or disclosed trade secrets through "'theft, bribery, or misrepresentation,'" its claim must fail. (ECF No. 6 at 12 (quoting 12 Pa.C.S. § 5302).) Defendant further asserts that he was an independent contractor, and Plaintiff failed to plead any express agreement that created a fiduciary relationship between the parties. (*Id.* at 12-13.) In response, Plaintiff contends that it alleged facts sufficient to establish that Defendant acquired its confidential and proprietary information and trade secrets under false pretenses and that Pennsylvania's UTSA applies to independent contractors. (ECF No. 11 at 11-12.)

Pennsylvania's UTSA defines "misappropriation" as follows:

(1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(2) disclosure or use of a trade secret of another without express or implied consent by a person who:
> (i) used improper means to acquire knowledge of the trade secret;
> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>> (A) derived from or through a person who had utilized improper means to acquire it;
>> (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>> (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
> (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

12 Pa.C.S. § 5302. "Improper means" is defined as "[i]nclud[ing], but is not limited to, theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or espionage through electronic or other means." *Id.*

As Plaintiff argues, "[w]hen disclosures of a confidential nature are made to an employee or an *independent contractor*, all trade secrets created out of that relationship are the exclusive property of the employer or the contracting party." *Mettler-Toledo, Inc. v. Acker*, 908 F. Supp. 240, 247 (M.D. Pa. 1995) (emphasis added). In response, Defendant asserts that the Court should rely upon the cases to which he cites — *Commonwealth v. Minds Coal Mining Corporation*, 60 A.2d 14 (Pa. 1948), and *Smalich v. Westfall*, 269 A.2d 476 (Pa. 1970). The court in *Minds Coal Mining Corporation*, quoting the Restatement of the Law of Agency, stated that independent contractors "may be agents . . . subject to the fiduciary duties of loyalty and obedience . . . or they may be persons employed . . .

without fiduciary obligations," suggesting that independent contractors may or may not be subject to fiduciary duties. 60 A.2d at 17-18. Additionally, the decision in *Smalich* related to the formation of an agency relationship. 269 A.2d at 480. The Court finds these decisions inapplicable and further notes that this District recently reaffirmed that "'[w]hen disclosures of a confidential nature are made to . . . an independent contractor, all trade secrets created out of that relationship are the exclusive property of the [] contracting party.'" *Transp. Compliance Assocs. v. Hammond*, No. 2:11-CV-1602, 2012 U.S. Dist. LEXIS 57844, at *7 (W.D. Pa. Apr. 25, 2012) (quoting *Mettler-Toledo, Inc.*, 908 F. Supp. at 247).

Moreover, Plaintiff sufficiently alleges its claim under Pennsylvania's UTSA. Specifically, Plaintiff avers that "Defendant has improperly obtained, and continues to retain, [its] confidential and proprietary information and trade secrets," (ECF No. 1 ¶ 2), and that "Defendant was privy to [its] trade secrets and confidential and proprietary information, including but not limited to customer and client lists, prospective customer and client lists, [Plaintiff's] processes, pricing structure, and related information," (*id.* ¶ 15). Plaintiff further alleges that Defendant "contacted [its] current customers and clients," (*id.* ¶ 16); "utilized [its] trade secrets and confidential or proprietary information to solicit [its] current customers and clients," (*id.* ¶ 17); and "disclosed [its] trade secrets and confidential or proprietary information," (*id.* ¶ 18). Within Count IV, Plaintiff avers that "Defendant is in [ ] possession of valuable confidential and proprietary information and trade secrets concerning [its] business" and that "Defendant knew that the aforementioned confidential and proprietary information and trade secrets were acquired

under circumstances giving rise to a duty to maintain their secrecy and limit their use." (*Id.* ¶¶ 55-56.)  Plaintiff also reasserts that "Defendant has obtained (and continues to retain) confidential and proprietary information relating to [its] clients, customers, processes and other such information from Plaintiff's databases through 'improper means'" and that "Defendant has used, or will inevitably use, the aforementioned confidential and proprietary information and trade secrets to his own personal benefit and to the detriment of Plaintiff." (*Id.* ¶¶ 57-58.)  Accordingly, the Court finds that Plaintiff's pleading is more than sufficient to place Defendant on notice of the basis of the misappropriation claim against him.

### C.  Defendant's Motion to Compel Initial Disclosures

Defendant has filed a motion to compel discovery.  (ECF No. 20.)  Specifically, Defendant contends that Plaintiff's initial disclosures fail to meet the requirements of Rule 26(a)(1) because Plaintiff:  (1) failed to provide the addresses and telephone numbers of the individuals likely to have discoverable information; (2) broadly stated the subject of the information possessed by these individuals; (3) failed to adequately describe the category of documents supporting its claims or defenses; and (4) failed to provide its computation of each category of damages.  (*Id.* ¶ 3(a)-(d).)  Plaintiff has not responded to Defendant's motion.

In its initial disclosures, Plaintiff identified three individuals who are likely to have discoverable information supporting its claims or defenses but did not include their addresses or telephone numbers.  (ECF No. 20-1 ¶ 1(a)-(c).)  Plaintiff stated that these

individuals "have discoverable information . . . as it relates to Defendant's business relationship with [Plaintiff] and the confidential and proprietary information belonging to [Plaintiff] that [Defendant] obtained by virtue of his relationship with [Plaintiff]." (*Id.*) Regarding the documents that it may use to support its claims or defenses, Plaintiff stated that it possesses: (1) "[c]orrespondence between [Plaintiff] and [Defendant];" (2) "[r]ecords and documentation reflecting [Defendant's] business relationship with [Plaintiff];" (3) "[n]otes, memoranda, and correspondence concerning [Defendant];" and (4) "District Court documents." (*Id.* ¶ 2(a)-(d).) Regarding damages, Plaintiff stated that "[d]iscovery is ongoing, and [it] has not yet made a final computation of damages. [It] seeks all direct, consequential, compensatory, incidental, and special damages arising out of [Defendant's] illegal and wrongful conduct . . . including punitive damages, attorneys' fees, and costs." (*Id.* ¶ 3.)

Defendant requests that the Court order Plaintiff to provide the addresses and telephone numbers of all of the individuals likely to have discoverable information, indicate the subject of the information these individuals possess, and describe the categories and locations of all documents or tangible things used to support its claims. (ECF No. 20 at 3.) Regarding the computation of damages, Defendant requests that the Court order Plaintiff to compute each category of damages claimed or, alternatively, prohibit Plaintiff from using at trial any information or witnesses not disclosed in its initial disclosures. (*Id.* at 3-4.) Finally, Defendant requests reasonable expenses and attorneys' fees incurred in preparing and filing his motion. (*Id.* at 4.)

As noted above, the Federal Rules of Civil Procedure permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). A party must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(i). In its initial disclosures, a party must also provide "a copy — or a description by category and location — of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(ii). "A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case." FED. R. CIV. P. 26(a)(1)(E).

Here, the addresses and telephone numbers of the individuals likely to have discoverable information, along with the subject matter of the information, is relevant. Although the addresses and telephone numbers of the individuals possessing discoverable information may have been unknown when Plaintiff served its initial disclosures on May 6, 2015, the information should now be available to Plaintiff, as discovery will be completed by December 14, 2015. (*See* ECF No. 29.) Similarly, the subject of the information that these individuals possess and descriptions of the categories and locations of all documents or tangible things used to support Plaintiff's claims are relevant and should now be known to Plaintiff.

Rule 26 provides that a party's initial disclosures must include "a computation of each category of damages claimed by the disclosing party — who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." FED. R. CIV. P. 26(a)(1)(A)(iii). Courts have understood "computation" to require "a specific computation of a plaintiff's damages," which includes "a disclosure of evidentiary material upon which the category of damages is based." *Stemrich v. Zabiyaka*, No. 1:12-CV-1409, 2013 U.S. Dist. LEXIS 113674, at *3 (M.D. Pa. Aug. 13, 2013) (internal quotations omitted). The computation "requires at least some analysis," and "simply reciting a dollar figure clearly is not enough." *Id.* at *3-4. However, the rule "does not place a great burden on the plaintiff" because "the plaintiff needs only to disclose what those damages are and how they were calculated." *Id.* at *4-5. "The plaintiff must merely disclose the best information available concerning the claim, however limited and potentially changing it may be." *Id.* at *5 (internal quotations omitted).

Here, Plaintiff has failed to provide a dollar figure or any analysis regarding its computation of damages. Additionally, Plaintiff has not disclosed any evidentiary material upon which the computation of damages is based. Rather, Plaintiff only provided categories of damages, such as direct, consequential, compensatory, incidental, and punitive damages, in its initial disclosures. (*See* ECF No. 20-1.) As discussed above, discovery will expire on December 14, 2015, and there is no proffered reason why Plaintiff cannot provide Defendant with the computation of its damages.

Defendant also requests that this Court issue an order requiring Plaintiff to pay attorneys' fees and costs related to the filing Defendant's motion to compel discovery. (*See* ECF No. 20 at 4.) In the alternative, Defendant requests that the Court prohibit Plaintiff from using at trial any information or witnesses not disclosed in its initial disclosures. (*Id.*)

Rule 37 provides that if a motion to compel discovery is granted, a court must "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A). However, the court must not order this payment if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A)(i)-(iii). Regarding a party's failure to disclose, Rule 37 provides that "[i]f a party fails to provide information . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In addition to this sanction, a court: "(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions." FED. R. CIV. P. 37(c)(1)(A)-(C).

"[T]he imposition of sanctions for abuse of discovery under [Rule] 37 is a matter within the discretion of the trial court." *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156

(3d Cir. 1995). In addition to the provisions of Rule 37, a court must consider and balance the: (1) willfulness and bad faith of the disobeying party; (2) prejudice to the moving party; and (3) effectiveness of lesser sanctions. *Estate of Spear v. IRS*, 41 F.3d 103, 111 (3d Cir. 1994). The Third Circuit has made the following observation regarding the award of attorneys' fees:

> Attorneys' fees and costs are not ordinarily recoverable and unless specifically authorized by statute are awarded only in extraordinary cases. . . . Exceptions to this general rule which are rooted in the inherent equity power of the courts consist of the power to assess attorneys' fees for the willful disobedience of a court order as part of the fine to be levied on a defendant . . . and the authority to award attorneys' fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.

*Hobbs & Co., Inc. v. Am. Investors Mgmt., Inc.*, 576 F.2d 29, 35 n.18 (3d Cir. 1978) (internal quotations omitted). Under the circumstances here, which are not extraordinary, the Court finds that although Plaintiff failed to appropriately provide information in its initial disclosures, it did not act willfully or in bad faith. As a result, this Court will deny Defendant's request for attorneys' fees and his alternative request that the Court prohibit Plaintiff from using at trial any information or witnesses not disclosed in its initial disclosures.

## VI.   CONCLUSION

For the reasons stated above, the Court will deny Defendant's motion to dismiss Plaintiff's complaint and will grant Plaintiff's request to quash service of its complaint. The Court will grant Defendant's motion to compel Plaintiff's initial disclosures but will deny Defendant's request for attorneys' fees.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORTH AMERICAN | ) | **CIVIL ACTION NO. 3:14-227** |
| COMMUNICATIONS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH SESSA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 29th day of September, 2015, upon consideration of the Defendant's motion to dismiss (ECF No. 5) and motion to compel (ECF No. 20), and upon further consideration of the parties' accompanying briefs and submitted exhibits, and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED** as follows:

1.    Defendant's motion to dismiss Plaintiff's complaint (ECF No. 5) is **DENIED**.

2.    Defendant's motion to compel Plaintiff's initial disclosures (ECF No. 20) is **GRANTED**.    Plaintiff shall serve its amended initial disclosures to Defendant within twenty-one (21) days after the date of this Order.

**IT IS FURTHER ORDERED** that Plaintiff's request that the Court quash service of its complaint (ECF No. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's request for attorneys' fees (ECF No. 20), and Defendant's request in the alternative that Plaintiff be prohibited from using at

trial any information or witnesses not disclosed in its initial disclosures (ECF No. 20), is

**DENIED.**

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**